# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| ROBERT JOHNSON, *individually and on behalf of a class of similarly situated individuals*,<br><br>Plaintiff,<br><br>v.<br><br>BOBCAT COMPANY,<br><br>Defendant. | Civil No. 15-2097 (JRT/HB)<br><br>**MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS** |

Robert K. Shelquist, **LOCKRIDGE GRINDAL NAUEN PLLP**, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401, for plaintiff.

Gregory E. Ostfeld, **GREENBERG TAURIG LLP**, 77 West Wacker Drive, Suite 3100, Chicago, IL 60601, and Benjamin Hulse, **BLACKWELL BURKE PA**, 431 South Seventh Street, Suite 2500, Minneapolis, MN 55415, for defendant.

Plaintiff Robert Johnson, owner of a snow removal business, brings this action against Defendant Bobcat Company ("Bobcat"), a skid-loader manufacturer, alleging breach of warranty, breach of contract, negligence, negligent misrepresentation, fraud by omission, fraudulent inducement, unjust enrichment, and violations of various statutory consumer protection laws. Johnson's claims stem from allegations that Bobcat misrepresented the true fuel tank capacity of a skid-loader that he purchased. Johnson further alleges that the loader had a defective coating and failed to reach the advertised top speed. Johnson brings claims individually and on behalf of a putative nationwide

class, seeking damages, costs and attorney fees, and injunctive relief to prevent Bobcat from continuing to disseminate misleading promotional materials. Bobcat now moves to dismiss the action in its entirety.

The Court will grant Bobcat's motion with respect to Johnson's claims for injunctive relief because Johnson has not alleged irreparable injury or threat of future harm. The Court will also grant the motion with respect to Johnson's negligence and negligent misrepresentation claims because those claims are barred by Minnesota's economic loss doctrine. However, the Court will deny the motion in all other respects. Johnson's other claims are plausible and Bobcat's pre-litigation refund offer did not deprive him of Article III standing.

## BACKGROUND[1]

Johnson is a Minnesota resident who owns and operates a snow removal business called Robert Gordon Homes, Inc. (Compl. ¶ 4, Apr. 23, 2015, Docket No. 1.) Johnson's business serves over 100 customers. (*Id.* ¶ 22.) Bobcat is a Delaware corporation with its principal place of business in North Dakota. (*Id.* ¶ 5.) Bobcat manufactures and sells compact skid-steer loaders, a product that can be used for plowing and removing snow. (*Id.* ¶¶ 12, 20.)

On October 13, 2014, Johnson purchased a new Bobcat S650 Compact Skid-Steer Loader from Lano Equipment, Inc., an authorized Bobcat dealership, for use in his snow removal business. (*Id.* ¶ 22.) Johnson previously owned a 2003 Bobcat S250 Compact

---

[1] For the purposes of this motion to dismiss, the Court takes Johnson's factual allegations as true. *See Cormack v. Settle-Beshears*, 474 F.3d 528, 531 (8th Cir. 2007).

Skid-Steer Loader, which he traded in at the time of purchase.  (*Id.*)  The total price of the new loader, minus the trade-in value of his old loader, was approximately $25,000.  (*Id.* ¶ 42.)

Johnson purchased the new loader because of Bobcat's various advertisements, representations, and affirmations regarding its qualities, characteristics, and capabilities. (*Id.* ¶¶ 1-2.)  Bobcat's promotional materials – including its brochures, website, information packets, product specification sheets, and warranties – advertised that "the new loader had a fuel tank capacity of somewhere between 27.2 and 27.5 gallons.  (*Id.* ¶ 15-16, 18-19.)  Johnson's old loader, by comparison, had an advertised fuel tank capacity of only 25 gallons.  (*Id.* ¶ 24.)  The larger fuel tank appealed to Johnson because it would allow him to travel further on a single tank of fuel and therefore serve more customers "in a timely fashion."  (*Id.* ¶ 23.)  The new loader was also advertised as having a "2-speed option," which allowed it to reach a top speed of 12.3 mph.  (*Id.* ¶ 15-16, 18-19.)  Johnson relied on these upgrades in deciding to purchase the new loader – by serving more customers, he would be able to grow his company and successfully compete with other snow removal businesses.  (*Id.* ¶¶ 23, 42.)

After the purchase, however, Johnson discovered that his new loader had "three significant defects.  First, he discovered that the fuel tank had a capacity of only 19.5 gallons rather than 27.2 to 27.5 gallons as advertised, a difference of approximately 8 gallons.  (*Id.* ¶¶ 26-28.)  The tank's true capacity was 24 gallons, and because the fuel suction tube did not reach the bottom of the tank, the capacity was diminished by an additional 4.5 gallons.  (*Id.*)  Johnson contacted Lano Equipment immediately upon

discovering this defect, and after several attempts, Lano was able to install a "piece together" suction tube that reached the bottom of the tank. (*Id.* ¶¶ 26-28.) Even with this repair, however, the fuel tank still held 3.2 to 3.5 less gallons than advertised. (*Id.* ¶ 28.)

Johnson next discovered that his new loader's top speed was not 12.3 mph as advertised, but rather, approximately half of that. (*Id.* ¶ 37.) Because the loader moved slower than expected, Johnson found that it took him "upwards of twice the amount" of time to remove snow than it would have if the loader had "been able to reach the advertised top speed," causing him to incur "increased fuel and labor costs." (*Id.* ¶ 38.)

Third and finally, Johnson discovered that the new loader had "a defective coating that fail[ed] to cover exposed metal, leading to premature rusting." (*Id.* ¶ 44.) Johnson noticed that the loader "displayed rust from the moment it was delivered to his business." (*Id.* ¶ 45.) When he contacted Bobcat about the problem, the company told him "that rust should be expected because the Loader is construction equipment." (*Id.*)

In March 2014, Johnson contacted Tim Krahn, a district sales manager for Bobcat, to complain about the fuel tank capacity defect. (*Id.* ¶ 41.) Krahn offered to refund the full cost of the loader, but Johnson rejected the offer. (*Id.* ¶ 42.) Johnson subsequently commenced this action against Bobcat on April 23, 2015. In the complaint, Johnson alleges the following Minnesota state law causes of action:

- Violations of the Minnesota Consumer Fraud Act ("MCFA"), Minn. Stat. § 325F.69
- Breach of Express Warranty
- Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose

- Violations of the Minnesota Unlawful Trade Practices Act ("MUTPA"), Minn. Stat. § 325D.13, and the Minnesota Deceptive Trade Practices Act ("MDTPA"), Minn. Stat. § 325D.44

- Violations of the Minnesota False Statement in Advertising Act ("MFSAA"), Minn. Stat. § 325F.67

- Negligence and Negligent Misrepresentation

- Unjust Enrichment

- Fraud by Omission

- Fraudulent Inducement

- Breach of Contract

Johnson asserts his claims individually and on behalf of a class of similarly situated individuals "who purchased a Bobcat S650 loader (or a model with the similar size and/or frame), through an authorized Bobcat dealership, from 2010 to the present." (*Id.* ¶ 46.) Johnson contends that the three defects affecting his new loader are widespread. Johnson seeks damages, costs and attorney fees, and injunctive relief to prevent Bobcat continuing to disseminate misleading promotional materials.

Bobcat now moves to dismiss the action in its entirety based on two central arguments. First, Bobcat makes a facial attack on Johnson's Article III standing under Federal Rule of Civil Procedure 12(b)(1). Second, Bobcat argues that Johnson has failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

## ANALYSIS

## I.   STANDARD OF REVIEW

When a defendant challenges the plaintiff's Article III standing under Rule 12(b)(1) based on a "deficiency in the pleadings" (called a "facial attack"), the Court's

standard of review is the same as a motion to dismiss brought under Rule 12(b)(6). *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007). In reviewing a motion to dismiss under Rule 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *See, e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed. *Id.*

## II.     ARTICLE III STANDING

Article III, section 2 of the Constitution limits federal courts' jurisdiction to certain "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l U.S.A.*, 133 S. Ct. 1138, 1146 (2013) (quoting *Raines*

*v. Byrd*, 521 U.S. 811, 818 (1997)).  To have standing to sue, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992)).

Here, Bobcat argues that Johnson lacks Article III standing because Bobcat offered to refund the full cost of the new loader prior to the commencement of this action. According to Bobcat, no case or controversy remains for the Court to resolve – Johnson has not suffered an injury in fact because the refund offer equaled or exceeded his maximum legal recovery, the alleged injuries are traceable to Johnson's own rejection of the refund offer and not to conduct by Bobcat, and a favorable decision by the Court would not redress Johnson's injuries because he already turned down complete relief.[2]

Bobcat concedes that neither the Eighth Circuit nor a court in this district has addressed the standing argument it now makes.  Instead, Bobcat relies on a series of out-of-circuit cases, all of which stand for the same general proposition:  when a defendant offers a plaintiff a full refund for all of its alleged loss prior to the commencement of

---

[2] Bobcat also initially argued that Johnson's claims are moot because its refund offer is ongoing.  *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 (1997) ("The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).").  However, Bobcat subsequently withdrew this argument and so the Court will not consider it here.  (Resp. of Def. Bobcat to Pl.'s Notice of Suppl. Authority at 3, Jan. 25, 2016, Docket No. 41.)

litigation, this refund offer deprives the plaintiff of Article III standing because the plaintiff cannot establish an injury in fact.  *See, e.g.*, *Epstein v. JPMorgan Chase & Co.*, No. 13-4744, 2014 WL 1133567, at *6-8 (S.D.N.Y. Mar. 21, 2014); *Becker v. Skype Inc.*, No. 5:12-06477, 2014 WL 556697, at *2-3 (N.D. Cal. Feb. 10, 2014); *Huss v. Sessler Ford, Inc.*, 799 N.E.2d 444, 450-51 (Ill. App. Ct. 2003).

Although the Court is persuaded that a pre-litigation refund offer for complete relief could potentially deprive a plaintiff of Article III standing, the Court finds – based on the facts alleged in the complaint – that no such offer was made here.  Johnson sought reimbursement not only for the cost of the new loader, but also for all consequential[3] and incidental[4] damages resulting from Bobcat's alleged misconduct.  Johnson, for example, alleges he (1) was unable to service as many clients in a timely fashion because of the smaller fuel tank, (2) endured "additional hardship and expense to ensure his loader meets the fuel tank specifications," (3) "incurred increased fuel and labor costs" because the loader did not reach the advertised top speed, (4) suffered decreased business productivity due to the defects, and (5) incurred increased business labor costs due to the defects.  (Compl. ¶¶ 1, 23, 38, 43.)  Because Bobcat's refund offer did not offer

---

[3] Consequential damages are damages "that 'do not arise directly according to the usual course of things from the breach of the contract itself, but are rather those which are the consequence of special circumstances known to or reasonably supposed to have been contemplated by the parties when the contract was made.'"  *Kleven v. Geigy Agric. Chemicals*, 227 N.W.2d 566, 569 (Minn. 1975) (quoting *Despatch Oven Co. v. Rauenhorst*, 40 N.W.2d 79 (Minn. 1949)).

[4] Incidental damages include any "reasonable expense incident to the . . . breach." *Simeone v. First Bank Nat. Ass'n*, 73 F.3d 184, 190 (8th Cir. 1996) (quoting Minn. Stat. § 336.2-715(1)).

compensation for these alleged damages, the Court finds that Johnson was entitled to reject the offer without sacrificing his Article III standing – a redressable injury in fact, caused by Bobcat, remains.

Bobcat raises several counterarguments, but all are inapposite. First, Bobcat argues that consequential and incidental damages are not recoverable under any of Johnson's causes of action. But this is inaccurate – they are recoverable under several causes of action, including Johnson's breach of warranty and fraud claims. *See, e.g.*, *Melford Olsen Honey, Inc. v. Adee*, 452 F.3d 956, 966-67 (8th Cir. 2006) (applying Minnesota law and finding that a plaintiff can recover consequential and incidental damages for breach of warranty); *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 647-48 (8th Cir. 1995) (noting that under Minnesota law, a plaintiff can recover consequential damages for fraud).

Bobcat also argues that consequential and incidental damages were excluded by a limitation on damages clause included in the formal warranty covering the loader.[5] (*See* Decl. of Benjamin W. Hulse ("Hulse Decl."), Ex. 1 at 2 ("Formal Warranty"), Aug. 17, 2015, Docket No. 23 ("In no event shall Bobcat Company . . . be liable for any . . . incidental . . . or consequential damages." (emphasis omitted).) However, this argument fails for two reasons. First, the limitation does not apply to Johnson's claims sounding in fraud. *Liimatta v. V & H Truck Inc.*, No. 03-5112, 2005 WL 2105497, at *8-

---

[5] The Court may consider the formal warranty because it is a "document[] necessarily embraced by the complaint." *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 791 (8th Cir. 2014); *see Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss.").

9 (D. Minn. Aug. 30, 2005 (finding that under Minnesota law, a limitation on consequential and incidental damages did not apply to fraud claims); *Lester Bldg. Sys. v. La.-Pac. Corp.*, No. A03-48, 2004 WL 291998, at *5 (Minn. Ct. App. Feb. 17, 2004) ("It is well settled that a disclaimer of warranties does not preclude an action for fraud.").

Second, there are legitimate and unresolved questions regarding whether the limitation is even enforceable. Johnson argues that he did not receive the formal warranty at the time of sale, which, if true, would render the limitation invalid. *Cf. Zutz v. Case Corp.*, No. 02-1776, 2006 WL 463539, at *3 (D. Minn. Feb. 24, 2006) ("If a disclaimer is not provided at the time of sale, it is invalid."). Under Minnesota law, the time of sale generally occurs upon "physical delivery of the goods" to the buyer, Minn. Stat. § 336.2-401(2), and Johnson asserts that he did not receive the formal warranty until **after** delivery.[6] Nothing in the complaint undermines this argument, meaning that the Court cannot resolve the dispute, and apply the limitation, at this stage of the case. *See In re Hardieplank Fiber Cement Siding Litig.*, No. 12-2359, 2013 WL 3717743, at *8 (D. Minn. July 15, 2013) (declining to apply a formal warranty clause on a motion to

---

[6] In rebuttal, Bobcat offers a copy of the loader delivery receipt, which Johnson signed. (Hulse Decl., Ex. 1 at 3 ("Delivery Receipt").) Bobcat argues that this receipt proves that Johnson received the formal warranty – and thus the limitation – upon physical delivery: he checked a box indicating that the "'Warranty Policy' and limitations" therein had been explained to him. (*Id.*) However, it is unclear whether the Court can even consider this document, as it appears to be a matter outside of the pleading. *See Gorog*, 760 F.3d at 791 (noting that on a motion to dismiss, the court may consider "documents necessarily embraced by the complaint [but] not matters outside the pleading"). And even if the Court did consider the receipt, it would not defeat Johnson's argument that the limitation was not disclosed at the time of sale. While the receipt indicates that the loader was delivered to Johnson on October 15, 2013, Johnson did not sign the receipt until two days later, on October 17, 2013. (Delivery Receipt.)

dismiss where there was an unresolved factual dispute regarding whether the clause was enforceable).

Bobcat next argues that even if Johnson was entitled to consequential or incidental damages, its refund offer exceeded **any** amount of damages that Johnson could hope to recover. Yet this argument is purely speculative – the amount of damages is a question to be resolved by the trier of fact, and not this Court on a motion to dismiss. *Melford Olsen Honey*, 452 F.3d at 966-67; *Commercial Prop. Invs.*, 61 F.3d at 647-50.

Bobcat lastly argues that Johnson did not properly allege consequential or incidental damages, but Johnson's complaint suggests otherwise. To recover consequential damages under Minnesota law, a plaintiff must establish that such damages were foreseeable to the defendant at time of contracting or at the time of the fraud. *See Simeone v. First Bank Nat. Ass'n*, 73 F.3d 184, 188 (8th Cir. 1996); *Commercial Prop. Invs.*, 61 F.3d at 647. For a breach of warranty claim, the plaintiff must also show that his consequential and incidental damages "could not be prevented." *Simeone*, 73 F.3d at 188.

Although Johnson's complaint does not include allegations reciting these exact standards, the Court nevertheless finds that he has satisfied his pleading burden. Johnson alleges numerous consequential and incidental damages resulting from Bobcat's purported misconduct. (*See, e.g.*, Compl. ¶¶ 1, 23, 38, 43.) He further alleges that Bobcat marketed the loader "for use in snow removal," advertised the loader as having a particular fuel tank capacity, and claimed that the "[i]ncreased fuel capacity" would give users "more time on the job without stopping to fill up." (*Id.* ¶ 2, 17-18.) Assuming

these allegations to be true, Bobcat either knew or should have known that snow-removal business owners who purchased the loader would suffer harm as a result of having to stop and re-fill the skid-loader's fuel tank more frequently.  The complaint moreover includes plausible allegations that Johnson took steps to prevent loss, including reporting the defect to Lano Equipment and Bobcat's district sales manager, Tim Krahn.  And although Johnson only explicitly requests consequential and incidental damages under his FSAA cause of action, the Court finds that they are not limited to that claim.  Johnson's prayer for relief requests, "with respect to **all** counts," that the Court grant "compensatory and **all other damages** allowed by law."   (*Id.* at 34 ¶ 2 (emphasis added).)   Given that Johnson has pleaded sufficient facts showing entitlement to consequential and incidental damages, the Court will construe this prayer-for-relief language as sufficient to authorize their award for his other causes of action under which they are permitted.  *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.")

In sum, the Court finds that Johnson has Article III standing – he alleges that he suffered consequential and incidental damages, and Bobcat's refund offer only encompassed the cost of the loader.

## III.    FAILURE TO STATE A CLAIM

Having determined that Johnson has Article III standing, the Court turns its attention to Bobcat's Rule 12(b)(6) motion to dismiss for failure to state a claim.

### A.    Statutory Consumer Protection Claims

Johnson brings claims under four Minnesota consumer protection statutes: MFSAA, MCFA, MUTPA, and MDTPA. *See* Minn. Stat. §§ 325D.13, 325D.44, 325F.67, 325F.69. Neither the MFSAA nor the MCFA provide a private cause of action. Thus, a plaintiff suing for violations of those statutes must pursue relief under Minnesota's Private Attorney General Statute ("Private AG Statute"). Minn. Stat. § 8.31, subdiv. 3a. The Private AG Statute allows a plaintiff to seek money damages, costs and attorney fees, and injunctive relief. *See In re Levaquin Products Liab. Litig.*, 752 F. Supp. 2d 1071, 1076 (D. Minn. 2010). Here, Johnson brings his MFSAA and MCFA claims under the Private AG Statute. (Compl. ¶¶ 54, 105.)

A plaintiff suing for a violation of the MUTPA, on the other hand, has two options. Because the MUTPA provides a private cause of action, a plaintiff may pursue relief directly under the statute. Minn. Stat. § 325D.15 ("Any person damaged . . . by reason of a violation of [the MUTPA] shall be entitled to sue for . . . injunctive relief . . . and . . . actual damages.") In addition, a plaintiff may also seek relief under the Private AG Statute, as described above. *Id.* § 8.31, subdivs. 1, 3a. Under both routes, a plaintiff may pursue money damages and injunctive relief; however, only the Private AG Statute provides for costs and attorney fees. *Compare id.* § 8.31, subdiv. 3a, *with id.* § 325D.15. Here, the Court finds that Johnson has alleged his MUTPA claims pursuant to both

theories of recovery – the private cause of action contained in § 325D.15[7] as well as the Private AG Statute.  (Compl. ¶¶ 87-88, 91.)

Finally, "under Minnesota law, the sole statutory remedy for [Johnson's MDTPA claim] is injunctive relief." *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1070 (D. Minn. 2013) (quoting *Dennis Simmons, D.D.S., P.A. v. Modern Aero, Inc.*, 603 N.W.2d 336, 339 (Minn. Ct. App. 1999) (internal quotation marks omitted)).

Bobcat moves to dismiss all of Johnson's statutory consumer protection claims on two grounds.  First, Bobcat argues that Johnson has failed to state **any** claims for injunctive relief.  Second, it argues that Johnson's claims that rely on the Private AG Statute fail as a matter of law because Johnson has not alleged a public benefit.

## 1.   Injunctive Relief

In order to state a claim for injunctive relief under the Private AG Statute, a plaintiff must allege an "irreparable injury."  *Buetow v. A.L.S. Enter., Inc.*, 650 F.3d 1178, 1184-85 (8th Cir. 2011).  An injury to the plaintiff is irreparable if it "is certain and great and of such imminence that there is a clear and present need for equitable relief." *Perkins v. Metro. Council, Metro HRA*, 21 F. Supp. 3d 1006, 1011 (D. Minn. 2014) (quoting *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996)).  In order to state a claim for injunctive relief under the MUTPA and the MDTPA, a plaintiff must allege a threat of future harm to himself.  *See Buetow*, 650 F.3d at 1185 (finding that a plaintiff

---

[7] Johnson does not explicitly request relief under Minn. Stat. § 325D.15.  However, in his prayer for relief, he requests, "with respect to all counts," that the Court grant "compensatory and all other damages allowed by law" and "all other relief allowable at law or equityl

must "prove the threat of future injury" in order to receive injunctive relief under the MUTPA); *Damon*, 937 F. Supp. 2d at 1071 ("[T]he Court finds that the Damons do not have a valid [MDTPA] claim for injunctive relief because they have not presented evidence that they face any risk of future harm to themselves."). Here, Bobcat argues that Johnson has not met either pleading standard, and the Court agrees. The Court will therefore dismiss Johnson's MDTPA claim entirely, as well as his MCFA, MFSAA, and MUTPA claims to the extent they seek injunctive relief.

Johnson's claims for injunctive relief fail for the simple reason that he does not make any allegations regarding irreparable injury or threat of future harm. Although Johnson makes reference to the cost of a new Bobcat loader and a bare request for an injunction "prohibiting [Bobcat] from falsely advertising the qualities, characteristics, and capabilities of the [l]oaders," he does not assert that he intends to purchase another Bobcat loader in the future. (Compl. ¶¶ 42, 102.) All of Johnson's claims are instead grounded in **past** damage, which is not a proper basis for injunctive relief. *See Buetow*, 650 F.3d at 1184-85; *Damon*, 937 F. Supp. 2d at 1071.

The closest that Johnson comes to meeting his pleading burden is by alleging that Bobcat's "unlawful conduct is continuing." (Compl. ¶¶ 99, 102.) But that allegation, in and of itself, is insufficient to rescue his claims. Johnson must allege irreparable injury or threat of future harm to **himself**, which he has not done. *See Buetow*, 650 F.3d at 1184-85; *Damon*, 937 F. Supp. 2d at 1071. Indeed, now that Johnson knows about the alleged defects in the loader, it is unlikely that he will be deceived again by Bobcat's misleading promotional materials. *See Buetow v. A.L.S. Enterprises, Inc.*, 713

- 15 -

F. Supp. 2d 832, 843 (D. Minn. 2010) ("In this case, there is no evidence indicating a risk of future harm to Plaintiffs. In fact, because Plaintiffs are aware of Defendants' false advertising, they are unlikely to be deceived by such advertising in the future."), *rev'd on other grounds*, 650 F.3d 1178; *Indep. Glass Ass'n, Inc. v. Safelite Grp., Inc.*, No. 05-238, 2005 WL 3079084, at *2 (D. Minn. Nov. 16, 2005) (dismissing MUTPA claim and finding no threat of future of injury because "now that Winter is aware of Safelite's alleged steering tactics, Winter is even more likely to be vigilant in the future").

Johnson cites only one case in support of his claim for injunctive relief: *Wildlife Research Center, Inc. v. Robinson Outdoors, Inc.*, 409 F. Supp. 2d 1131 (D. Minn. 2005). But the Court finds that this case is inapposite. There, the plaintiff sued the defendant for false advertising, alleging violations of the MDTPA, MUTPA, and MFSAA. *Id.* at 1134. The plaintiff prevailed at trial and the court granted the plaintiff's post-trial motion for a permanent injunction. *Id.* at 1138-39. Johnson cites this case to show that he is entitled to injunctive relief. *Wildlife*, however, does not support Johnson's claims because there was no dispute in that case as to whether the plaintiff had proven an irreparable injury or threat of future harm. Although the court did not directly address the issues, the court's factual recitation makes clear that the plaintiff did face such threats: the parties were competitors and sold similar hunting products. *Id.* at 1134. Accordingly, absent an injunction, the defendant's ongoing false advertisements could harm the plaintiff's business. Here, by comparison, Johnson has not made any allegations regarding either irreparable injury or threat of future harm. His claims for injunctive relief therefore fail.

2.      **Public Benefit**

A plaintiff pursuing relief under the Private AG Statute must "demonstrate that their cause of action benefits the public." *In re Levaquin*, 752 F. Supp. 2d at 1076 (quoting *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000)).   If the plaintiff fails to make this showing, the Court must dismiss the underlying claims.   *See Wehner v. Linvatech Corp.*, No. 06-1709, 2008 WL 495525, at *3-4 (D. Minn. Dec. 20, 2008) (granting defendant's summary judgment motion because plaintiff did not show that his MUTPA, MCFA, and MFSAA claims under the Private AG Statute benefitted the public).   Bobcat argues that Johnson's MCFA, MFSAA, and MUTPA claims under the Private AG Statute fail because they do not benefit the public.

In determining whether an action benefits the public, courts consider "the degree to which the defendants' alleged misrepresentations affected the public; the form of the alleged representation; the kind of relief sought; and whether the alleged misrepresentations are ongoing." *Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1017 (D. Minn. 2012) (citing *In re Levaquin*, 752 F. Supp. 2d at 1077-79).   When a "plaintiff[] "seek[s] only damages, courts typically find no public benefit." *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, 11 F. Supp. 3d 933, 937 (D. Minn. 2014).   "This is because individual damages, generally speaking, merely enrich (or reimburse) the plaintiff to the defendant's detriment; they do not advance the public interest." *Id.* at 938 (quoting *Buetow v. A.L.S. Enter., Inc.*, 888 F. Supp. 2d 956, 960 (D. Minn. 2012)).   However, "the fact that a plaintiff requests no injunctive relief 'does not preclude [him or her] from

satisfying the public benefit requirement." *In re Levaquin*, 752 F. Supp. 2d at 1077 (quoting *ADT Sec. Servs., Inc. v. Swenson, ex rel. Estate of Lee,* 687 F. Supp. 2d 884, 892 (D. Minn. 2009)).  For example, courts have found that a request for money damages satisfies the public benefit requirement if the request would have a "deterrent effect" on the defendant. *Khoday*, 858 F. Supp. 2d at 1017; *see In re Levaquin*, 752 F. Supp. 2d at 1079 (finding that the plaintiffs' request for money damages benefitted the public because "[t]his lawsuit may indirectly cause defendants to redress a public safety hazard").  Courts have also found that claims for money damages benefit the public where the defendant's alleged misrepresentation was "made to a significant segment of the public." *Id.* at 1017; *see also Collins v. Minn. Sch. of Bus., Inc.*, 655 N.W.2d 320, 330 (Minn. 2003) (finding a public benefit where the defendant "made misrepresentations to the public at large by airing a television advertisement" and "made numerous sales and information presentations" to students).  However, when the misrepresentation is "one-on-one" and "purely private," an action for money damages does not benefit the public. *Summit Recovery, LLC v. Credit Card Reseller, LLC*, No. 08-5273, 2010 WL 1427322, at *5 (D. Minn. Apr. 9, 2010).

Applying this framework, the Court finds that Johnson has sufficiently alleged a public benefit.  First, although Johnson's claims are only for money damages (the Court has already found that Johnson is not entitled to injunctive relief), it is significant that the alleged misrepresentations were disseminated to the public at large.  Johnson contends that Bobcat's misleading promotional materials reached "consumers throughout the United States" and that "thousands" of consumers may have purchased loaders in reliance

on those materials.  (Compl. ¶¶ 15, 47.)  These allegations establish that Johnson's claims are not purely private or based solely on one-on-one misrepresentations.  Moreover, Johnson alleges that the misrepresentations are ongoing – Bobcat purportedly has not corrected or updated any of its promotional materials.  (*Id.* ¶ 34.)  Finally, money damages could have a deterrent effect on Bobcat.  While Johnson's individual claims may be modest, he purports to a represent a class of thousands.  Although it is uncertain whether Johnson will succeed in certifying the class, the specter of a class action may prompt Bobcat to alter its allegedly misleading activity (the Court expresses no opinion at this stage of the case as to whether Bobcat has actually engaged in misleading activity).  And if Johnson and the purported class eventually prevail on the merits, money damages will "benefit consumers through providing compensation and a deterrent effect." *Khoday*, 858 F. Supp. 2d at 1017; *see In re Nat'l Arbitration Forum Trade Practices Litig.*, 704 F. Supp. 2d 832, 839 (D. Minn. 2010) ("Plaintiffs' continued pursuit of monetary damages for the class . . . has a public benefit.").  Altogether, the Court finds that Johnson's claims advance the public interest and are therefore sufficient to state claims under the Private AG Statute.

### B.    Breach of Express Warranty

Johnson asserts a breach of express warranty claim based on affirmations contained in Bobcat's promotional materials.  Bobcat moves to dismiss this claim on two grounds.  First, it argues that its promotional materials did not create any express warranties.  Alternatively, it argues that even if its promotional materials did create

express warranties, those warranties were disclaimed by the formal warranty purportedly in effect at the time of sale. For the reasons that follow, the Court rejects Bobcats arguments.

To show that its promotional materials did not create any express warranties, Bobcat first relies on *Masepohl v. American Tobacco Co.*, 974 F. Supp. 1245 (D. Minn. 1997). Bobcat cites *Masepohl* for the proposition that "broad claims" contained in advertisements and promotions do not create express warranties. *Id.* at 1252-53. But Bobcat misinterprets and misapplies this case. In *Masepohl*, although the court found the defendant's advertisements did not create express warranties because they were too broad, the court explicitly recognized that "advertising and other descriptions of a product by a seller can, in some circumstances, create an express warranty," such as when the "advertisements . . . contain very specific claims and promises as to how a certain product will perform." *Id.*; *see also Zutz*, 2006 WL 463539, at *3 (finding that product affirmations contained in a brochure constituted express warranties). Here, Johnson points to very specific claims and promises contained in Bobcat's promotional materials regarding how the loader will perform: its precise fuel tank capacity (27.2 to 27.5 gallons) and its precise top speed (12.3 mph). On a motion to dismiss, these allegations are more than sufficient to support the creation of express warranties.

Bobcat also argues that it did not create express warranties because Minnesota law defines an "express warranty" as "a written statement arising out of a consumer sale pursuant to which the manufacturer, distributor, or retailer undertakes (1) to preserve or maintain the utility or performance of the goods or provide compensation or replacement

if there is a failure in utility or performance."  Minn. Stat. § 325G.17, subdiv. 5.  Bobcat

contends that this definition does not encompass the statements it is alleged to have made

in its promotional materials.  Bobcat's recitation of the law, however, is inaccurate.  The

above definition comes from the Minnesota Consumer Protection Act, and only applies to

a limited subset of sections within that act.  *Id.* § 325G.17, subdiv. 1 ("As used in sections

325G.17 to 325G.20, the terms defined in this section have the meanings given them.")

Johnson's breach of express warranty claim, by contrast, is brought under Minn. Stat.

§ 336.2A-210, Minnesota's version of the UCC.  An express warranty under that section

is defined as "**[a]ny** affirmation of fact or promise . . . which related to the goods" or

"**[a]ny** description of the goods which is made part of the basis of the bargain."  Minn.

Stat. § 336.2A-210(1)(a)-(b) (emphasis added).  Johnson's allegations comport with this

definition.

Bobcat alternatively argues that even if its promotional materials did create

express warranties, those warranties were disclaimed by the formal warranty in effect at

the time of sale.  The formal warranty states, in pertinent part: "This warranty is

exclusive and in lieu of all other warranties and conditions, except the warranty of title.

Bobcat Company disclaims all other warranties and conditions, express or implied,

including any implied warranties or conditions of merchantability or fitness for a

particular purpose."  (Formal Warranty (emphasis omitted).)  Although this disclaimer

may eventually bar Johnson's claim, the Court cannot apply it at this time because there

are significant and unresolved questions regarding its enforceability.

First, because the Court must accept the factual allegations in the complaint as true, Bobcat cannot yet rely on the disclaimer to avoid conflicting warranties it may have created through it promotional materials.  Under Minnesota law, "a seller may disclaim express warranties."  *Zutz*, 2006 WL 463539, at *3 (citing *Hydra-Mac Inc. v. Onan Corp.*, 450 N.W.2d 913, 916 (Minn. 1990)).  However, "[i]f an express warranty and a disclaimer cannot be reconciled, the warranty prevails."  *Id.* (citing Minn. Stat. § 336.2-316(1) and *Hydra-Mac*, 450 N.W.2d at 917).  Here, there appears to be an irreconcilable conflict between the express warranties allegedly created by Bobcat's promotional materials and the disclaimer:  the promotional materials warrant a particular fuel tank capacity and top speed, whereas the disclaimer would disclaims these warranties.  In light of this conflict, the Court cannot yet decide the applicability of the disclaimer.

Second, Johnson has argued that the disclaimer is unconscionable.   Under Minnesota law, when a plaintiff challenges a disclaimer as unconscionable, the Court must allow the plaintiff "the opportunity to submit evidence regarding the disclaimer's commercial setting, purpose, and effect."  *In re Hardieplank*, 2013 WL 3717743, at *8 (citing Minn. Stat. § 336.2-302)).  The Court therefore cannot apply the disclaimer without first giving Johnson this opportunity.

Third, as discussed above, there is a factual dispute regarding whether Johnson actually received the formal warranty at the time of sale; this again precludes the Court from applying the disclaimer at this stage of the case.  *See Zutz*, 2006 WL 463539, at *3 ("If a disclaimer is not provided at the time of sale, it is invalid.")

Based on the above, the Court will deny Bobcat's motion to dismiss the breach of express warranty claim.

### C.      Breach of Implied Warranties

Johnson alleges that Bobcat breached the implied warranties of merchantability and fitness for a particular purpose by selling him a defective loader.  Bobcat moves to dismiss these claims, again relying on the disclaimer in the formal warranty.  For the reasons explained in the immediately preceding section, however, the Court will not apply the disclaimer at this stage of the litigation – Johnson has challenged the disclaimer as unconscionable and there are unresolved factual questions regarding whether Johnson received the disclaimer at the time of sale.

### D.      Negligence and Negligent Misrepresentation

Bobcat argues that Johnson's negligence and negligent misrepresentation claims are barred by the economic loss doctrine, and the Court concurs.  The economic loss doctrine generally prohibits a plaintiff "from recovering purely economic losses in tort." *Thnunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 871 (D. Minn. 2012).  In Minnesota, the economic loss doctrine is codified at Minn. Stat. § 604.101.  This section "exhaustively states the economic loss doctrine" and thus abrogates the common law version of the doctrine.  *Ptacek v. Earthsoils, Inc.*, 844 N.W.2d 535, 538-39 (Minn. Ct. App. 2014) (quoting Minn. Stat. § 504.101).

The statutory economic loss doctrine applies to only two types of claims: product defect tort claims and common law misrepresentation claims.  *See* Minn. Stat. § 604.101,

subdiv. 2.   Under the statute, "a buyer may not bring a product defect tort claim for compensatory damages unless the defect 'caused harm to the buyer's tangible personal property other than the goods or the buyer's real property.'"   *Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 829 (D. Minn. 2010) (quoting Minn. Stat. § 604.101, subdiv. 3).   A buyer is also prohibited from bringing "a common law misrepresentation claim against a seller relating to the goods sold . . . unless the misrepresentation was made intentionally or recklessly."   Minn. Stat. § 604.101, subdiv. 4.

Here, because Johnson's negligence and negligent misrepresentation claims relate to the allegedly defective loader, they fall within the purview of Minn. Stat. § 604.101. Johnson does not, however, allege that the loader harmed his "tangible personal property" or "real property."   Furthermore, he does not allege that the misrepresentation was intentional or reckless (nor could he, as his claim is one for **negligent** misrepresentation). Accordingly, the Court will dismiss these claims as barred by the economic loss doctrine.

### E.   Fraud Claims

#### 1.   Lack of Particularity

Bobcat challenges all of Johnson's claims sounding in fraud, arguing that they lack particularity as required by Federal Rule of Civil Procedure 9(b).   As a threshold matter, Rule 9(b) applies not only to Johnson's common law claims for fraudulent inducement and fraud by omission, but also to his surviving statutory consumer protection claims under the MCFA, MFSAA, and MUTPA.   *See ADT Sec. Servs., Inc. v.*

*Swanson*, No. 07-2983, 2008 WL 2828867, at *7 (D. Minn. July 21, 2008) (applying Rule 9(b) to claims alleging violations of the MCFA, MFSAA, and MUTPA).

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Eighth Circuit has interpreted the term "circumstances" of fraud to include "the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Commercial Prop. Invs.*, 61 F.3d at 644 (quoting *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982), *adhered to on reh'g*, 710 F.2d 1361 (8th Cir. 1983) (en banc)). The complaint therefore must read like the opening paragraph of a newspaper article: it must contain the "who, what, when, where and how" of the alleged fraud. *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549-50 (8th Cir. 1997) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). One of the primary purposes of the Rule 9(b) is to ensure that a defendant can adequately respond and prepare a defense to charges of fraud. *Greenwood v. Dittmer*, 776 F.2d 785, 789 (8th Cir. 1985). As a result, "[c]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Parnes*, 122 F.3d at 549 (quoting *Commercial Prop. Invs.*, 61 F.3d at 644).

Bobcat argues that Johnson's claims lack particularity because they fail to identify the time, place, and contents of the alleged false representations, or any specific promotional materials that Johnson reviewed. But the Court is not persuaded. Contrary to what Bobcat argues, Johnson does identify a specific promotional material: Bobcat's own website. He also alleges particularized content from the website – that the loader he

purchased would have a fuel tank capacity of 27.5 gallons. Although Johnson does not cite the specific webpage that he visited, this level of additional detail is not required by Rule 9(b). It stands to reason that Bobcat can navigate its own website. And, the Court can reasonably infer the timeframe during which Johnson reviewed this content – in the several weeks or months immediately preceding his purchase of the new loader. Johnson provides other particularized information as well, including a detailed description of the "two-speed option" and specific mile-per-hour parameters. Altogether, these allegations satisfy Johnson's pleading burden. Bobcat has more than enough information to adequately respond and prepare a defense, which is the critical inquiry under Rule 9(b).

### 2.      Fraud by Omission

Bobcat also argues that Johnson's fraud by omission claim fails as a matter of law because the parties were not in a confidential or fiduciary relationship and it owed no disclosure duty to Johnson. But this argument misconstrues the law. It is true that under Minnesota law, "[f]or a nondisclosure to amount to a fraud, a party must first be under a duty to disclose information to another party." *Exeter Bancorporation, Inc. v. Kemper Sec. Grp., Inc.*, 58 F.3d 1306, 1314 (8th Cir. 1995) (citing *Richfield Bank & Trust Co. v. Sjogren,* 244 N.W.2d 648, 650 (Minn. 1976)). However, being in a confidential or fiduciary relationship is one of **three** ways in which such a duty can arise. A duty to disclose can also arise "(1) where a party has made a representation and must disclose more information to prevent the representation from being misleading; [and] (2) where a

party has special knowledge of material facts to which the other party does not have access." *Id.*

Here, the Court finds that Johnson's complaint includes allegations sufficient to satisfy the second circumstance:  that Bobcat had superior knowledge of material facts to which Johnson did not have access.  Johnson alleges that Bobcat, as the manufacturer, was in "a superior position to know the true facts about their product [and] . . . to know the actual design of the loader."  (Compl. ¶ 128.)  He further alleges that he "could not reasonably have been expected to learn or discover" the misrepresentations at the time of purchase, in part because of "the manner in which the customers fill their fuel tanks." (*Id.* ¶¶ 33, 128.)  These allegations plausibly establish a duty of disclosure.

## F.   Causation

Bobcat lastly argues that all of Johnson's causes of action fail to state a claim for relief because he has not alleged a causal connection between his injuries and Bobcat's purported misconduct.[8]  Bobcat premises this argument on the same reasoning it relied on in challenging Johnson's Article III standing – because Bobcat offered Johnson a complete refund but Johnson rejected the offer, his alleged injuries are traceable to that rejection and not to Bobcat's purported misconduct.  Put another way, Bobcat argues that Johnson's injuries are entirely self-inflicted.  But this argument is erroneous.  As the Court has already held, Bobcat's refund offer was not actually one for complete relief.  Even if Johnson had accepted the offer, he still would have lacked recompense for his

---

[8] Bobcat contends that all ten causes of action require at least some showing of causation. The Court will assume, without deciding, that this is the case.

alleged consequential and incidental damages, including, among other things, diminished business productivity, increased business labor costs, and increased fuel costs.  There is thus a clear causal connection between Bobcat's alleged misconduct and Johnson's alleged injuries, a connection that was neither cut off by the refund offer nor self-inflicted because Johnson rejected that offer.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Bobcat Company's motion to dismiss [Docket No. 21] is **GRANTED in part** and **DENIED in part** as follows:

1.    The motion is **GRANTED** as to Johnson's claims for injunctive relief, as alleged in Counts 1, 4, and 5 of the complaint under the MCFA, MUTPA, MDTPA, and MFSAA.  These claims are **DISMISSED with prejudice**.

2.    The motion is **GRANTED** as to Johnson's claims for negligence and negligent misrepresentation, as alleged in Count 6 of the complaint.  These claims are **DISMISSED with prejudice**.

3.    The motion is **DENIED** in all other respects.

DATED:  March 30, 2016
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____
JOHN R. TUNHEIM
Chief Judge
United States District Court

- 28 -